IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| REDDICK MANAGEMENT CORP., AND KEVIN REDDICK, Individually and in his Official Capacity as Owner of Reddick Management Corp.;<br><br>                Plaintiffs,<br><br>    vs.<br><br>CITY OF OMAHA, NEBRASKA, PAUL KRATZ, in his Official Capacity; MICHELLE PETERS, in her Individual and Official Capacities; and BROOK BENCH, in his Individual and Official Capacities;<br><br>                Defendants. | 8:16CV99<br><br>**MEMORANDUM AND ORDER** |

This matter is before the court on the plaintiffs' motions for a temporary restraining order and preliminary injunction, Filing Nos. 6 and 9, and on defendants' (collectively, "the City of Omaha" or "the City") objections to the plaintiffs' submissions, Filing No. 24. This is an action for deprivation of constitutional rights under 42 U.S.C. § 1983. It arises out of a public bidding process through which the defendants solicited bids for the demolition of the Omaha Civic Auditorium. Plaintiffs assert that their rights to due process and equal protection, as guaranteed by the 14th Amendment, have been violated by defendant City of Omaha's failure to follow the Small and Emerging Businesses ("SEB") ordinance, Omaha, Neb., Mun. Code § 10, Division 5.[1] The court held a hearing on the motion on March 23, 2016.

    I.    FACTS

---

[1] *See* Hearing Exhibit ("Hr'g Ex.") 101, Certified copy of Omaha Municipal Code, Division 5, Small and Emerging Business Program.

In 2008, the State of Nebraska passed a constitutional amendment that prohibited any state agency or political subdivision from giving preference to anyone based on race, gender, or national origin. *See* Neb. Const. Art. I, § 30. Prior thereto, the Omaha Municipal Code required the City to give certain priorities to minority- and women-owned businesses. *See* Omaha, Neb., Mun. Code § 10-200.3, Editor's note, https://www.municode.com/library/ne/omaha/codes/code_of_ordinances?.[2] Thereafter, the Code was amended to state that "commencing January 1, 2010, the city shall make every good-faith effort feasible to utilize small and emerging small businesses in all city contracts." *Id.*, § 10-200.3(a).

Prior to soliciting bids, the public works department and the department soliciting the bid are required to "work with the purchasing agent to determine if the bid or any portion of the bid may be completed by a certified small business or emerging small business," but may recommend that "small or emerging small businesses not be utilized on a bid if it is determined that there are not sufficient small or emerging small businesses available to respond to the bid or that have the capacity and capability to provide the supplies, materials, technical, professional or other services." *Id.*, § 10-200.3(d). Further, the Code states:

> Provided that an adequate number of certified entities are available, the solicitation or request for proposal will give priority to certified Tier I and/or Tier II small businesses and/or emerging small businesses. "Priorities" are set forth as follows: if there is an adequate number of qualified and certified [emerging small businesses (ESBs)], first priority shall be given to Tier I ESBs; if not, then the next priority will be given Tier II ESBs; if there are not an adequate number of ESBs, then priority shall go to Tier I small businesses and then to Tier II small businesses.

---

[2] Ordinance No. 38563, § 16, adopted Nov. 3, 2009, repealed the former § 10-200.3 which pertained to appeals and derived from § 10-200.3 of the 1980 Code; Ordinance No. 35344, § 1, adopted Set. 26, 2000; and Ordinance No. 37101, § 2, adopted Aug. 9, 2005. Editors note to § 10-200.3.

*Id.*, § 10-200.3(d). Under the ordinance, "the mayor shall establish an overall goal and sub-goals as necessary for the utilization of small and/or emerging business in all city contracts." *Id.*, § 10-200.3(b). The Code also states:

> If the public works department and the architect/design professional designing the project determine that that the project or portions of the project are appropriate for small or emerging small businesses either as a prime contractor or a subcontractor, then such determinations shall be made a part of the bid specifications, and bidders not adhering to the requirements set forth in the bid specifications will be deemed non-responsive.

*Id.*, § 10-200.3(f).

In their complaint, the plaintiffs allege that plaintiff Reddick Management Company ("RMC"), doing business as Husker Tree and Landscaping, is a Tier I emerging small business, and is properly listed as such with defendant City of Omaha. RMC is owned by Kevin Reddick, who is an African American. The plaintiffs allege that on November 12, 2015, the Park Planning Division of the Parks Department invited bids for the demolition of the Civic Auditorium. They allege that defendant Brook Bench, acting in his official capacity, in consultation with defendant Michelle Peters, determined that the bids need not conform to the requirements of § 10-200.3. They assert that defendant Peters did not provide any official recommendation from defendant Bench that § 10-200.3 be set aside pursuant to subpart (d) when questioned about the bidding process by the City Council on January 26, 2016.

Plaintiffs further allege that the Parks Department subsequently received multiple bids, including bids from Anderson Excavating, an Omaha-based company, for $3,448,000, and DeNovo Constructors, Inc., an Illinois-based company, for $3,105,743. DeNovo, as the apparent low bidder on the project, received a recommendation from the Mayor that the City Council should award DeNovo the contract to demolish the Civic Auditorium. Plaintiffs

allege that after receiving the Mayor's recommendation to award the contract to DeNovo, the City Council, acting in its official capacity on behalf of Defendant City of Omaha, allowed DeNovo to revise and clarify its bid to nominally include small and emerging small businesses as subcontractors.

The plaintiffs also allege that at a City council hearing on February 2, 2016, the City Council heard from representatives of DeNovo as well as New Horizons, LLC, an asbestos-abatement contractor that is classified as a SEB Tier II small business. They contend New Horizons stated there were approximately ten businesses in Nebraska that could do abatement work required of the project and that around five or six of these businesses were local, meaning in and around Omaha. They next allege that at the meeting, the City Council indicated that, because an estimated 25% of the project would be potentially handled by SEBs, rather than the 14% that is typically required under § 10-200.3, the Council's concerns about the handling of the project were alleviated.[3]

Husker Tree & Landscaping is a purported subcontractor of one of the proffered bidders, Anderson Excavating ("Anderson"). Anderson was not the low bidder and therefore not recommended or approved to perform the job.

The City essentially accedes to the plaintiffs' recitation of facts, but contends that, in awarding the contract, the City exercised the discretion it was entitled to exercise under the ordinance. It argues that the ordinance requires the City only to make a good-faith effort to use small businesses as contractors and the policy is not mandatory. It also contends the plaintiffs lack standing.

---

[3] The plaintiffs have submitted transcripts of the City Council meetings, Filing No. 22, and the defendants have objected to the plaintiffs' submissions, stating, *inter alia*, that the transcripts are uncertified and incomplete. *See* Filing No. 24. The court has reviewed the submissions, but because the court has not relied on them in making its determination, the court will overrule the City's objections as moot.

## II. LAW

A preliminary injunction is an extraordinary remedy and the burden of establishing the propriety of an injunction is on the movant. *Roudachevski v. All-American Care Centers, Inc.*, 648 F.3d 701, 705 (8th Cir. 2011). When evaluating whether to issue a preliminary injunction, a district court must consider four factors: (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties; (3) the probability that the movant will succeed on the merits; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc). No single factor is determinative, although the failure to demonstrate the threat of irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction. *See Adam-Mellang v. Apartment Search, Inc.,* 96 F.3d 297, 299 (8th Cir. 1996); *see also Modern Computer Sys., Inc. v. Modern Banking Sys.*, Inc., 871 F.2d 734, 738 (8th Cir. 1989) (en banc).

A showing of irreparable harm does not automatically mandate a ruling in the plaintiff's favor; the court must proceed to balance the harm to the defendant in granting the injunction. *Hill v. Xyquad, Inc.*, 939 F.2d 627, 630-31 (8th Cir. 1991). The burden on a movant to demonstrate that a preliminary injunction is warranted is heavier when granting the preliminary injunction will in effect give the movant substantially the relief it would obtain after a trial on the merits. *Calvin Klein Cosmetics Corp. v. Lenox Lab.*, 815 F.2d 500, 503 (8th Cir. 1987).

Success on the merits has been referred to as the most important of the four factors, but it is insufficient on its own. *Roudachevski*, 648 F.3d at 706. Even when a plaintiff has a strong claim on the merits, preliminary injunctive relief is improper absent a showing of a threat of irreparable harm. *Id.*; *Bandag, Inc. v. Jack's Tire & Oil, Inc.*, 190 F.3d 924, 926

5

(8th Cir. 1999) ("The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies)." The threat of irreparable harm is a necessity in proving the propriety of preliminary injunctive relief. *Id.* "To succeed in demonstrating a threat of irreparable harm, 'a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief.'" *Id.* (quoting *Iowa Utils. Bd. v. Fed. Commc'ns Comm'n,* 109 F.3d 418, 425 (8th Cir. 1996)).[4]

"Standing is a 'threshold inquiry' and 'jurisdictional prerequisite that must be resolved before reaching the merits of a suit'". *Medalie v. Bayer Corp.*, 510 F.3d 828, 829 (8th Cir. 2007). "To show standing under Article III of the U.S. Constitution, a plaintiff must demonstrate (1) injury in fact, (2) a causal connection between that injury and the challenged conduct, and (3) the likelihood that a favorable decision by the court will redress the alleged injury." *Iowa League of Cities v. E.P.A.*, 711 F.3d 844, 869 (8th Cir. 2013) (quoting *Young Am. Corp. v. Affiliated Computer Servs. (ACS), Inc.*, 424 F.3d 840, 843 (8th Cir. 2005). An injury in fact "is one that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Jones v. Gale*, 470 F.3d 1261, 1265 (8th Cir. 2006). If a plaintiff does not have Article III standing to sue, the court does not have subject matter jurisdiction over the suit. *Iowa League*, 711 F.3d at 869.

"[A]n invasion of a legally protected interest" is an injury sufficient for the purposes of standing when it is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "By particularized,

---

[4] Examples of irreparable injury include extraordinary litigation expense, continued subjection to a challenged regulation due to unreasonable administrative delay in responding to the challenge, loss of First Amendment freedoms, and the immediate destruction or loss of the very substantive right that the individual seeks to protect. *West v. Bergland*, 611 F.2d 710, 718 (8th Cir. 1979) (internal citations and parentheticals omitted).

we mean that the injury must affect the plaintiff in a personal and individual way." *Id.* at 560 n. 1. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Id.* at 561. A contingent liability can present a sufficient injury for Article III standing. *See Clinton v. City of New York*, 524 U.S. 417, 432 (1998) (holding that denial of a "statutory bargaining chip" can "inflict[ ] a sufficient likelihood of economic injury to establish standing"); *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 422 F.3d 490, 498 (7th Cir. 2005) ("[T]he present impact of a future though uncertain harm may establish injury in fact for standing purposes."); *Walters v. Edgar*, 163 F.3d 430, 434 (7th Cir. 1998) ("A probabilistic harm, if nontrivial, can support standing."); *see also Jones,* 470 F.3d at 1267 (feedlot owner had standing to challenge constitutionality of law that would prevent him from entering into certain contracts with out-of-state corporations; even though he had not entered into such a contract, the law negatively affected his "ability to earn income, borrow, and plan for [his] financial future").

"The Equal Protection Clause of the Fourteenth Amendment commands that no state shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). In order to state an equal protection violation, the plaintiff must generally prove purposeful, invidious, intentional discrimination on the basis of the plaintiff's membership in a suspect class. *Foster v. Wyrick*, 823 F.2d 218, 221 (8th Cir. 1987).

To state a claim under the Fourteenth Amendment Due Process Clause, a plaintiffs must allege that he or she was deprived of a protected interest without due process of law.

7

*Demien Construction Co. v. O'Fallon Fire Protection District*, 812 F.3d 654, 658 (8th Cir. 2016); *Barnes v. City of Omaha*, 574 F.3d 1003, 1005-06 (8th Cir. 2009). "Protected interests under the Due Process Clause are those to which a person holds a 'legitimate claim of entitlement,' and stem from 'independent source[s] such as state law.'" *Id.,* (quoting *Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). Generally, an unsuccessful bidder obtains no property right in the award of a construction contract. *Higgins Elec., Inc. v. O'Fallon Fire Prot. Dist.*, No. 15-1222, 2016 WL 690849, at *4 (8th Cir. Feb. 22, 2016) (applying Missouri law); *see Day v. City of Beatrice*, 101 N.W.2d 481 (Neb. 1960) (stating that "[o]rdinarily an unsuccessful bidder for public work has acquired no legal right to protect, either in law or equity, since the letting of contracts to the lowest bidder is regarded as being for the benefit of the public and not for individual bidders.").

   III.   DISCUSSION

As a threshold matter, the court finds the plaintiffs have alleged a sufficient injury to confer jurisdiction on the court at this stage of the proceedings. They have alleged that they are covered under the ordinance, and the City has not challenged that contention. They allege that, as a certified small and/or an emerging business, RMC is entitled to certain procedures by virtue of the ordinance and they allege those procedures have not been followed. The allegations amount to an "invasion of a legally protected interest,"—that is, the plaintiffs' purported interest, on their own behalf and on behalf of others affected, in the City following the procedures under the ordinance. At this point, the court is not prepared to state that the plaintiffs lack standing. The case is essentially at the pleading stage; as the case progresses, the plaintiffs will be required to address injury, causation, and redressability of harm to establish standing.

With respect to injunctive relief, the court finds the plaintiffs have not shown they are entitled to that extraordinary remedy. They have not established that they will suffer irreparable injury as a result of the City's action. The plaintiffs contend that the irreparable harm they will suffer is "losing out on a very big project." If the plaintiffs prove up on their claims of deprivation of Constitutional rights, there is an adequate remedy at law for the deprivation—money damages. The plaintiffs claimed injury can be compensated by a damages award that is ascertainable and can be reduced to a certain dollar amount. The plaintiffs would be entitled to money damages to the extent they could be proved, in addition to nominal damages and attorneys' fees to vindicate their Constitutional rights.

Although, in some circumstances, a colorable claim of the deprivation of a constitutional right can be considered to amount to an irreparable injury, the plaintiffs have not presented a colorable Constitutional violation. They have not shown any equal protection violation, in that they have made no showing they were treated differently than other contractors or subcontractors. Also, the plaintiffs have not established that they had any property interest of which they were deprived without due process. The present facts do not indicate the sort of situation that calls for extraordinary relief.

In light of this finding, the court need not address the other *Dataphase* factors, but notes for the record that the balance of harms favors the City. The City argues that an injunction would cause a costly delay and would be detrimental to the City. The City would likely face a breach of contract action from the contractor awarded the bid if it were to re-bid the contract. Also, as noted above, the plaintiffs cannot establish a probability of success on the merits in that it is not likely that they can show a colorable Constitutional violation. Last, the court finds that the public interest weighs in favor of proceeding with the timely demolition of the Civic auditorium.

9

Accordingly, the court finds the plaintiff's motions for a temporary restraining order and preliminary injunction should be denied.

IT IS HEREBY ORDERED:

1. The plaintiffs' motions for a temporary restraining order and preliminary injunction (Filing Nos. 6 and 9) are denied.

2. The defendant's objections to the plaintiffs' submissions (Filing No. 24) are overruled as moot.

Dated this 22nd day of April, 2016.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge